**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| CALVIN PARNELL, | : | |
| | : | Civ. Action No. 18-16680(RMB) |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DAVID ORTIZ, | : | |
| | : | |
| Respondent | : | |

**BUMB**, District Judge

This matter comes before the Court upon Petitioner Calvin Parnell's petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his loss of good conduct time resulting from a prison disciplinary hearing (Pet., ECF No. 1); Respondent's Answer to Petition For a Writ of Habeas Corpus ("Answer," ECF No. 6); and Petitioner's Response to Respondent's Answer ("Reply," ECF No. 7.) For the reasons discussed below, the Court denies the petition.

I.  BACKGROUND

Petitioner is an inmate presently confined in the Federal Correctional Institution in Fort Dix, New Jersey. (Pet., ECF No. 1.) On February 1, 2007, Petitioner was sentenced in the United States District Court, District of Maryland to a 188-month term of imprisonment with 5 years of supervised release. (Declaration of

Christina Clark ("Clark Decl."), Ex. 1, ECF No. 6-1 at 7.) If Petitioner receives all good conduct time available to him, his projected release date is March 6, 2020. (Id. at 6.)

On August 17, 2017, when Petitioner was incarcerated in USP Lewisburg Camp, in Lewisburg, Pennsylvania, Petitioner was issued the following incident report, authored by Officer M. Kline:

> On the above time and date, I was conducting the 12:01 am count of Unit 1 range K03. When I approached K03-047 I noticed the cube was empty but the covers to the only bed with sheets was pulled back with a reading light on showing a white Apple iPhone with earbuds lying on the mattress. When I finished counting the range I/M Parnell #42401-037 was standing by the entrance door where he was ordered to stand by Officer R. Klees who found him on the wrong side of the range during count. I/M Parnell showed me that he lived in K03-047 and that he was the only one living there. I pat searched I/M Parnell and left him in the lobby with Officer R. Klees. I returned to K03-047 to secure property, under a gray sweatshirt on the side bunk I found a black cell phone made by Alcatel. I then secured the rest of the inmate's property.

(Id., Ex. 5, ECF No. 6-1 at 26.)

The incident report was delivered to Petitioner on the day it was written. (Id.) On August 31, 2017, Lieutenant J. Foura advised Petitioner of his rights in the disciplinary proceedings (Id.)

Petitioner was transferred to FCI Allenwood low security in White Deer, Pennsylvania, where the DHO Hearing was held. (Petr's

Affidavit, ECF No. 1-2 at 3 ¶4.) The Unit Disciplinary Committee[1] ("UDC") held a hearing on September 7, 2017, and Petitioner declined the opportunity to make a statement. (Clark Decl., Ex. 5, ECF No. 6-1 at 26, ¶17.) The UDC referred the charge to a DHO for further proceedings, and Petitioner was advised of his rights in the DHO process. (Clark Decl., Ex. 7, ECF No. 6-1 at 34.)

The following statement was written on the acknowledgment of rights form, "Inmate unable to sign." (Id.) Additionally, a section of the form that was to be completed when an inmate was advised of his rights but refused to sign was signed by staff member K.A. Metzger. (Id.) Additionally, on a BOP form entitled "Notice of Discipline Hearing Before the (DHO)," Petitioner indicated that he wished to have a staff representative, E. Harrison, Plumbing Foreman, and he did not wish to present any other witnesses. (Id., Ex. 8, ECF No. 6-1 at 36.)

The hearing was held before DHO Todd W. Cerney on September 14, 2017. (Id., Ex. 10, ECF No. 6-1 at 42.) Petitioner's staff representative appeared and stated that Petitioner worked for him in the prison plumbing shop. (Id. at 40, §II(C)). Harrison had

---

[1] Pursuant to 28 C.F.R. § 541.7(a), a UDC reviews incident reports once a staff investigation is completed, and the UDC will do one of the following (1) determine the inmate committed the prohibited act charged; (2) determine the inmate did not commit the prohibited act; or (3) if the inmate is charged with a Greatest or High severity prohibited act, refer the incident report to a DHO for further review.

previously obtained information that Petitioner was involved in contraband but he searched Petitioner's work areas and never found anything. (Clark Decl., Ex. 10, ECF No. 6-1 at 40.) Petitioner waived his right to any other witness and made the following statement, "I am aggressive about smoking in the bathroom. I don't smoke. I told my boss I was gonna get set up over it. I never told no names and never will. It was my nightlight and book, but that was it." (Id. § III(B), (C)(1)-(4).)

In making his determination, DHO Cerney considered the incident report, the testimony and the following evidence: (1) a memorandum from R. Klees written on the same day as the incident report; (2) a photograph; and (3) the chain of custody log. (Id., Ex. 10, ECF No. 6-1 at 41, §III (D).) DHO Cerney determined that Petitioner committed the charged act of Possession of a Hazardous Tool, Code 108. (Id., ¶E.) He did not find Petitioner's testimony that he had been "set up" convincing, and he further noted that Petitioner refused to provide names of the alleged offenders. DHO Cerney also noted that Petitioner was the sole occupant of the area where the phones were found and, as such, he had a responsibility to keep his area free of contraband. (Id., ¶V.)

As a result of the DHO's determination, Petitioner was sanctioned with 60 days of disciplinary segregation, disallowance of 40 days of good conduct time, a 12-month loss of telephone privileges, and a 6-month loss of commissary privileges. (Id., §

VI.) The final DHO report was delivered to Petitioner on September 28, 2017. (Clark Decl., Ex. 10, ECF No. 6-1 at 42, §IX.)

Petitioner appealed DHO Cerney's decision to the Northeast Regional Director. (Id., Ex. 2, ECF No. 6-1 at 10.) In his appeal, Petitioner claimed that he had not waived his right to a witness, he asked to call Inmate Baljit Singh Rehal, who had "first hand knowledge of the inmates at the camp that had discussed having [Petitioner] removed from the camp by underhanded means." (Id.)

Inmate Rehal gave a written statement that he had been willing to testify at the DHO hearing because he overheard other inmates planning to have Petitioner removed from the camp by planting a cell phone in his cube, but Counselor Metzgar had told Plaintiff that Rehal did not have any relevant evidence because he was not present during the incident. (Clark Decl., Ex. 2, ECF No. 6-1 at 12.) On November 6, 2017, the Northeast Regional Director remanded the incident report for a rehearing before a DHO. (Id. at 13.)

On November 28, 2017, the BOP transferred Petitioner to the Federal Correctional Institution in Elkton, Ohio. (Clark Decl., Ex. 4, ECF No. 6-1 at 22.) A new UDC hearing was held at FCI Elkton on December 21, 2017, and the charge was referred to a DHO. (Id., Ex. 11, ECF No. 6-1 at 47.) For the second DHO hearing, Petitioner did not request a staff representative but did request a witness, Inmate Baljit Singh Rehal, who would testify that he heard rumors

about Petitioner being "set up." (Clark Decl., Ex. 14, ECF No. 6-1 at 53.)

The DHO rehearing was rescheduled from February 20, 2018 to February 23, 2018, because Petitioner requested the presence of his staff representative from his first hearing, Mr. Harrison. (Id., Ex. 15, ECF No. 6-1 at 55, ¶II(C).) On February 23, 2018, Mr. Harrison appeared at the hearing before DHO H. Miller via videoconferencing. (Id. at 55, 58.) Mr. Harrison testified that

> [Petitioner] came to me prior to the incident and indicated he was going to be set up. I heard inmates were giving him drop notes to SIS but I do not know which inmates gave drop notes to SIS. Parnell never gave me any names of inmates.

(Id. at 55, ¶II(C).)

Petitioner also made a statement at the rehearing: "I was set up for speaking out about smoking in the bathroom and anyone could have set me up. I do not have names or numbers of inmates who may have set me up. The cell phone should have been sent out for forensics." (Id., ¶III(B).)

Mr. Rehal was unavailable to testify at the rehearing in person because he was housed at FCI Loretto, but he provided a written statement that Petitioner was his cellmate in the SHU at FCI Allenwood, and Petitioner had often complained about other inmates smoking in the bathroom near his bunk at Lewisburg Camp. (Id., ¶III(C)(2).) Petitioner told Mr. Rehal that a corrections

officer had said that he saw another inmate leaving Petitioner's bunk area just before the cell phone was found. (Clark Decl., Ex. 15, ECF No. 6-1 at 55, ¶III(C)(2).) Mr. Rehal said that he had heard other inmates plan to set Petitioner up by planting a cell phone, but Rehal could only identify the inmates as "the smoking crew." Mr. Rehal believed that Petitioner was set up for complaining about smoking because Petitioner would not have left a cell phone out on his bed during "Count." (Id.)

At the conclusion of the rehearing, DHO Miller determined that Petitioner committed the prohibited act of Possession of a Hazardous Tool, Code 108. (Id., ¶IV.) DHO Miller considered the entire history of the case and concluded that (1) Mr. Rehal's testimony was only hearsay statements by Petitioner; (2) Mr. Rehal provided no testimony that he observed any inmate planting the cell phone; and (3) DHO Miller questioned the credibility of Plaintiff's complaints about inmates smoking because Petitioner had himself been disciplined for possession of cigarettes. (Id. at 56-57, ¶V.)

As a result of the rehearing, Petitioner was sanctioned to a 40-day loss of good conduct time, 40-day period of Disciplinary Segregation (instead of 60 days), 6-month loss of commissary privileges and 12-month loss of telephone privileges. (Id., ¶VI.) The final DHO report was delivered to Petitioner on February 23, 2018. (Id., ¶IX.) Petitioner appealed to the Northeast Regional

Office and the Central Office, and both appeals were denied. (Clark Decl., Ex. 3, ECF No. 6-1 at 15-20.)

II. DISCUSSION

  A. <u>Standard of Law</u>

  28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
> . . .
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." <u>Denny v. Schultz</u>, 708 F.3d 140, 143-44 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." <u>Id.</u> (quoting <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556–57 (1974)).

The Supreme Court defined the due process protections required where a prison disciplinary hearing may result in loss of good conduct time. The five due process protections in a prison disciplinary proceeding include: 1) the right to appear before an impartial decision-making body; 2) twenty-four hour advance

written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written decision by the fact-finder including the evidence relied on and the reason for the disciplinary action. Wolff, 418 U.S. at 546-71. Further, the DHO's decision must be supported by "some evidence." Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985).

B. The Parties' Arguments

1. The Petition

Petitioner states two grounds for relief, supported by his affidavit: (1) DHO Cerney's failure, at the original hearing, to have inmate witness Rehal appear in person, rather than by presenting a written letter at the rehearing, was a structural error that is per se reversible; and (2) insufficient evidence to support the DHO's finding. (Pet., ECF No. 1; Petr's Aff., ECF No. 1-2.)

For his first ground for relief, Plaintiff explains that both he and Inmate Rehal had been transferred to FCI Allenwood from Lewisburg Camp, and Petitioner made DHO Cerney aware of the fact that Mr. Rehal was available to testify in person. (Petr's Aff, ECF No. 1-2, ¶23.) If Mr. Rehal had been called to testify in

person at the first hearing, rather than submit a written statement at the second hearing, he could have given a more precise and detailed account of his knowledge of Petitioner's conflicts with other inmates at Lewisburg Camp over smoking in the bathrooms. (Id., ¶¶24-26.) Petitioner asserts the failure to call Mr. Rehal in person at the first hearing constitutes reversible error because Mr. Rehal's presence would have made a difference in the outcome of the DHO hearing. (Id., ¶27.)

For his second ground for relief, Petitioner contends that the DHO relied, at most, on a mere scintilla of evidence to find him guilty of possessing two cell phones in his cube. (Id., ¶30.) Petitioner asserts that his cube at Lewisburg was a common area that any inmate had access to and could have planted the cell phones there. (Id., ¶31.) Petitioner was not present when the phones were found and his request to have the phones finger-printed and checked for data entries was denied. (Id.) Petitioner further asserts it was unreasonable to believe he would have left a cell phone in plain view on his bed. (Id.)

In his affidavit, Petitioner requested appointment of counsel under 18 U.S.C. § 3006A. A court may appoint counsel to a financially eligible petitioner seeking relief under 28 U.S.C. § 2241 when the interests of justice so require. 18 U.S.C. § 3006A(a)(2)(B). Petitioner has ably presented his case and a hearing is not necessary to decide the issues presented in the

petition. The interests of justice do not require appointment of counsel in this matter, and the request is denied.

2. The Answer

Respondent submits that the petition is without merit because Petitioner was afforded due process and there is some evidence to support the DHO's finding. (Answer, ECF No. 6 at 2.) Respondent asserts that Petitioner did not request a witness nor did he identify Mr. Rehal as a person with relevant information at any point in the proceedings before the first UDC and DHO hearings. (Id. at 12.) The reason for the remand for a new hearing was that Petitioner had not signed the Notice of Discipline Hearing Form. (Id.) Mr. Rehal was not reasonably available to testify at the second DHO hearing because it was held at FCI Elkton, and Mr. Rehal was incarcerated in FCI Loretto. (Id., citing 28 C.F.R. § 541.8(f)). Petitioner was not prejudiced, according to Respondent, because Mr. Rehal provided a written statement and Petitioner did not show prejudice from his inability to present live testimony. (Id. at 13.)

Furthermore, Respondent contends that Petitioner was not entitled to forensic examination of the cell phones. (Id. at 14.) Petitioner was charged with possession of the cell phones found in his bed and sweatshirt, and, under the circumstances, a forensic examination could not have exonerated him of possessing these

items. (Answer, ECF No. 6 at 14-15, citing Donahue v. Grondolsky, 398 F. App'x 767 (3d Cir. 2010)).

As to the sufficiency of the evidence, Respondent argues that the DHO's decision is supported by "some evidence," that is—the the cell phones were found in Petitioner's bed and his sweatshirt. (Answer, ECF No. 6 at 17.) Furthermore, neither Petitioner nor his witness could identify any inmates involved in planting the cell phones. (Id.) Constructive possession, even in a shared cell, is sufficient to constitute "some evidence" in a prison disciplinary proceeding. (Id. at 16-17, citing Brown v. Recktenwald, 550 F. App'x 96, 98 (3d Cir. 2013); Denny v. Schultz, 703 F.3d 140, 145-147 (3d Cir. 2013)).

3. Petitioner's Reply

First, Petitioner contends the DHO was compelled by BOP Program Statement 5270.09 to make Petitioner's witness available upon his request. (Reply, ECF No. 7 at 4.) Second, Petitioner contends he was not in constructive possession of the cell phones because he was not present when they were found in plain view on his bed and inside his sweatshirt in a common area open to other inmates. (Id.)

C. Analysis

Inmates do not have an "unqualified right to call witnesses" at a prison disciplinary hearing. Kenney v. Lewisburg, 640 F. App'x 136, 139 (3d Cir. 2016) (citing Wolff, 418 U.S. at 566.) A prisoner

has a limited right to call witnesses with relevant information, if they would not present a threat to penological interests. <u>Levi v. Holt</u>, 193 F. App'x 172, 175 (3d Cir. 2006) (citing <u>Wolff</u>, 418 U.S. at 566-67; 28 C.F.R. § 542.17(c)).

The fact that Petitioner's witness would have been available at his first hearing is irrelevant because the sanctions at issue were imposed after remand by the BOP Northeast Regional Director for a new hearing. Petitioner contends that the BOP was compelled by BOP Program Statement 5270.09 to make his witness available. BOP Program Statement Chapter 5, § 541.8(f)(2)and (3) provide that the "DHO will call witnesses … who are reasonably available…" but "[y]our requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence."

The Third Circuit has held that a witness is not "reasonably available" pursuant to 28 C.F.R. § 541.8(f)(3), if he has been released from custody. <u>Pappas v. Allenwood</u>, 548 F. App'x 31, 33 (3d Cir. 2013). While Mr. Rehal remained in BOP custody and was potentially available via telephone or videoconferencing, it was within the BOP's discretion to determine whether he was reasonably available under the circumstances. See <u>Wolff</u>, 418 U.S. at 566-67 ("The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials … are

reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion….")

Petitioner claims he was prejudiced because Mr. Rehal could have provided more concise information if examined in live testimony. It is clear, however, that Mr. Rehal could only provide information that there were inmates who wanted to set Petitioner up but not that he had knowledge of any inmate doing so. Mr. Rehal was not incarcerated at USP Lewisburg in August 2017, when the cell phones were found in Petitioner's bed and in his sweatshirt. The DHO rejected Mr. Rehal's testimony because he did not witness anyone planting the cell phones, and his testimony was based on information Petitioner provided to him in conversations after the fact.

The next issue is whether Petitioner had constructive possession of the cell phones which would provide "some evidence" supporting DHO Miller's finding of guilt. It is well-established in the Third Circuit that discovery of contraband in a shared cell constitutes "some evidence" sufficient to uphold a prison disciplinary sanction against each inmate in the cell. Denny, 708 F.3d at 145-47; Brown v. Recktenwald, 550 F. App'x 96, 98 (3d Cir. 2013) (gun found under sink in cell shared by six inmates met some evidence standard); Soloman v. Warden, FCI Fairton, 506 F. App'x 147, 149 (3d Cir. 2012) (affirming DHO determination that inmate

had constructive possession of cell phone found in his work area that was shared by three other inmates.)

Here, although the open layout of the prison camp may have permitted access to Petitioner's "cube," the cell phones were found on his bed and in his sweatshirt. Short of persuasive evidence that the cell phones were planted, Petitioner was responsible for contraband found in an area he was personally responsible for, his bed and his sweatshirt. See Donahue v. Grondolosky, 398 F. App'x 767, 772-73 (3d Cir. 2010) (rejecting argument that the petitioner did not constructively possess SIM card where numerous inmates in his dorm had access to the area where contraband was found because the SIM card was taped to back of the petitioner's clothes drawer, which he was responsible for.) Therefore, Petitioner was not denied the right to due process in his prison disciplinary proceedings.

IV. CONCLUSION

For the reasons discussed above, the Court will deny the petition for writ of habeas corpus under 28 U.S.C. § 2241. An appropriate order follows.


Date: **January 31, 2020**

                                           s/Renée Marie Bumb
                                           **RENÉE MARIE BUMB**
                                           **United States District Judge**